# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

GERARD JACKSON, on behalf of
himself and others similarly situated,

　　　　　Plaintiff,

　　v.

CLEAR LINK INSURANCE
AGENCY, LLC,

　　　　　Defendant.

No. 4:22-CV-01466

(Chief Judge Brann)

## MEMORANDUM OPINION

### SEPTEMBER 29, 2023

## I.　　BACKGROUND

This case arises out of alleged violations of the Telephone Consumer Protection Act.[1] Plaintiff Gerard Jackson alleges that, despite having his telephone number listed on the National Do Not Call Registry, he has received numerous calls from telemarketing vendors Digital Media Solutions, LLC ("DMS") and Empire Solutions on behalf of Clearlink Insurance Agency, LLC.[2] Jackson subsequently brought this suit under the TCPA, seeking damages and injunctive relief.[3] Discovery ensued, giving rise to two disputes now before the Court: (1) Jackson's motion to compel Clearlink to produce settlement agreements arising from TCPA complaints;[4]

---

[1]　47 U.S.C. § 227.
[2]　Am. Compl., Doc. 28 ¶¶ 18-36.
[3]　Compl., Doc. 1; Am. Compl. (adding DMS and Empire Solutions).
[4]　Jackson Mtn. to Compel Settlement Agreements, Doc. 43.

and (2) Jackson's motion to compel production of due diligence performed by Clearlink of DMS as part of a potential acquisition of the company.[5] Both motions have been briefed and are now ripe for disposition.[6]

## II.   LAW

Federal Rule of Civil Procedure 26(b)(1) provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Such discovery must take into account "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs the likely benefit."[7] "Evidence is relevant if it has any tendency to make a fact more or less probable than it would be without the evidence and the fact is of consequence in determining the action."[8]

The party filing a motion to compel bears the initial burden of "demonstrat[ing] the relevance of the information sought to a particular claim or

---

[5]   Jackson Mtn. to Compel Diligence, Doc. 59.

[6]   Mtn. to Compel Settlement Agreements; Clearlink Opp. Mtn. to Compel Settlement Agreements ("Clearlink Settlement Opp."), Doc. 47; DMS Opp. Mtn. to Compel Settlement Agreements ("DMS Settlement Opp."), Doc. 48; Doc. 59; Clearlink Opp. Mtn. to Compel Diligence ("Clearlink Diligence Opp.'), Doc. 63; DMS Opp. Mtn. to Compel Diligence ("DMS Diligence Opp."), Doc. 65. The Motion to Compel Settlement Agreements and the underlying discovery request are directed to Clearlink. The Court nonetheless permitted DMS to submit briefing. Order, Doc. 44.

[7]   Fed. R. Civ. P. 26(b)(1).

[8]   Fed. R. Evid. 401.

2

defense. The burden then shifts to the opposing party, who must demonstrate in specific terms why a discovery request does not fall within the broad scope of discovery or is otherwise privileged or improper."[9] "Generally, courts afford considerable latitude in discovery in order to ensure that litigation proceeds with the fullest possible knowledge of the issues and facts before trial."[10]

## III.   ANALYSIS

### A.   Motion to Compel Settlement Agreements

At issue in Jackson's first motion to compel is Clearlink's objection to producing settlement agreements in response to Jackson's interrogatory requesting Clearlink to: "Identify all material terms of any resolution regarding any claim alleging unlawful telemarketing occurred during the putative class period."[11] Jackson argues that the requested settlement agreements are relevant to the damages analysis and could be relevant to the vicarious liability analysis.[12] Clearlink asserts that the request is not proportional and, because Jackson has not argued that they are in his brief, he has waived that argument. In the alternative, Clearlink argues the request is disproportional to the needs of the case because they are presumptively confidential, would impose a substantial burden on Defendants, and the information

---

[9]    *Osagie v. Borough of State College*, 586 F. Supp. 3d 314, 321 (M.D. Pa. 2022) (quoting *Miller v. McGinley*, 2022 WL 212709, at *2 (M.D. Pa. Jan. 24, 2022)).

[10]   *Id.* (citing *Naranjo v. T. Walter*, 2021 WL 4226062, at *3 (M.D. Pa. Sept. 16, 2021); *Hickman v. Taylor*, 329 U.S. 495, 501 (1947)).

[11]   Jackson Interrog. 1, Doc. 43-1 at 5.

[12]   *See generally* Doc. 43.

sought is duplicative.[13] DMS, in addition to joining Clearlink's arguments, further argues that Jackson has not met the heightened standard set out by Federal Rule of Evidence 408 for the admissibility of settlement agreements and that the settlement agreements themselves are not relevant.[14]

Clearlink's position that Jackson has waived any argument regarding proportionality overstates the extent to which it is "clear" that proportionality is the "thrust of Clearlink's objections."[15] Further, on a motion to compel, it is Jackson's burden to show that the requested discovery is relevant.[16] If Jackson carries that burden, it is then Clearlink's burden to show, in specific terms, why it does not fall within the broad scope of discovery or is otherwise improper.[17]

Before the Court can turn to whether Jackson has met his burden, it must first address Defendants' arguments that disclosure of settlement agreements requires a heightened showing of relevance.[18] "[D]espite the absence of any binding authority

---

[13] *See generally* Doc. 47.

[14] *See generally* Doc. 48.

[15] *Cf.* Clearlink Settlement Opp. 4; Jackson Interrog. 1. Also, Jackson does address the objection, asserting that "while Clearlink asserts a breadth/burden objection, it does so without particularity." Mtn. to Compel Settlement Agreements 7. Further, it seems unlikely that this would impose a significant burden given that Clearlink has apparently received "few formal and informal TCPA complaints." *Cf.* Clearlink Settlement Opp. 2.

[16] *Osagie*, 586 F. Supp. 3d at 321; *accord Fassett v. Sears Holdings Corp.*, 319 F.R.D. 143, 149 (M.D. Pa. 2017);

[17] *Osagie*, 586 F. Supp. 3d at 321; *accord Clemens v. New York Cent. Mut. Fire Ins. Co.*, 300 F.R.D. 225, 227 (M.D. Pa. 2014).

[18] Clearlink frames this as a proportionality issue. However, courts, and the substance of Clearlink's arguments, evaluate this issue through the lens of relevancy. *Cf.* Clearlink Settlement Opp. at 5 (observing that courts have required a particularized showing regarding the relevance of documents relating to settlement negotiations (citing *Dutton v. Todd Shipyards Corp.*, 2009 WL 10674991, at *1 (E.D. Pa. Nov. 17, 2009); *Key Pharm., Inc. v. ESI-Lederle, Inc.*, 1997 WL 560131, at *2 (E.D. Pa. Aug. 29, 1997)), 5-6 (arguing that Jackson's contention

. . . numerous District Courts within this Circuit have required a heightened showing when a party seeks to compel the production of a settlement agreement."[19] Federal Rule of Evidence 408 prohibits the admission of settlement agreements or evidence relating to the negotiation of such agreements for the purposes of (1) impeaching a prior inconsistent statement or contradiction, or (2) proving or disproving the validity or amount of a disputed claim. The underlying policy of Rule 408, encouraging efficient settlement of disputes, "has led courts to adopt a more demanding standard than Rule 26(b)(1) when it comes to discovery of settlement agreements."[20] Outside of the Third Circuit, however, the prevailing view is "that the required showing of relevance is no higher for settlements than it is for other kinds of information."[21] In the absence of binding precedent, the Court adopts the majority standard: "The only constraint is whether, under Rule 26 of the Federal

---

that the settlement agreements are relevant "misses the mark"), 6 (arguing that it is the existence of complaints, not their resolution that is "relevant to determine whether the defendant committed a willful or knowing violation of the TCPA"), 7 ("Tellingly, none of Plaintiff's cases hold that discovery of prior settlement agreements is relevant . . .").

[19]  *Higgin botham v. City of Trenton*, 2018 WL 10483122, at *3, *3 n.4 (D.N.J. Aug. 14, 2018) (collecting cases); *see also Landmesser v. General Motors*, 2023 WL 5729228, at *3 (M.D. Pa. Sept. 5, 2023) (collecting cases).

[20]  *Spear v. Fenkell*, 2015 WL 3947559, at *1 (E.D. Pa. June 26, 2015).

[21]  *Fossil Grp., Inc. v. Angel Seller LLC*, 2021 WL 5181308, at *4 (E.D.N.Y. Oct. 22, 2021) (quoting *King Cnty., Wash. V. IKB Deutsche Industriebank AG*, 2012 WL 3553775, at *1 (S.D.N.Y. Aug. 17, 2012)); *accord Allergan, Inc. v. Teva Pharmaceuticals USA, Inc.*, 2017 WL 132265, at *1 (E.D. Tex. Jan. 12, 2017) (collecting cases); *Blount v. Major*, 2016 WL 6441597, at *1 (E.D. Mo. Nov. 1, 2016) (collecting cases).

Rules of Civil Procedure the [settlement agreement] 'is relevant to any party's claim or defense and proportional to the needs of the case.'"[22]

The Court finds unpersuasive the reasoning of *Spear v. Fenkell*[23] and other courts which have required a heightened standard. The text of Rule 26 is clear that "[i]nformation within th[e] scope of discovery need not be admissible in evidence to be discoverable."[24] Though the Court agrees that a "strong public policy encouraging settlement animates Rule 408,"[25] "[t]he duty to provide exceptions to the discovery rules based on considerations of public policy falls to the legislative branch of this Government, not the judicial branch."[26] Rule 408 is not unique among the Rules of Evidence for having been animated by strong public policy concerns.[27] Evidence subject to such rules is nonetheless discoverable,[28] unless Congress has taken steps to shield that information from discovery.[29] Further, to the extent that discovery of

---

[22] *State Farm Mut. Auto. Ins. Co. v. Universal Health Grp., Inc.*, 2016 WL 6822014, at *2 (E.D. Mich. Nov. 18, 2016) (quoting Fed. R. Civ. P. 26(b)(1)).

[23] 2015 WL 3947559.

[24] Fed. R. Civ. P. 26(b)(1).

[25] *Cf. Spear*, 2015 WL 3947559, at *1.

[26] *Osagie*, 586 F. Supp. 3d at 324.

[27] *E.g.*, *White v. Wireman*, 500 F. Supp. 3d 327, 334 (M.D. Pa. 2020) (Rule 407); *Siroky v. Allegheny Cnty*, 2018 WL 1465759, at *3 (W.D. Pa. Mar. 26, 2018) (Rule 501).

[28] *See Bistrian v. Levi*, 2015 WL 13867259, at *2 (E.D. Pa. Nov. 30, 2015) (rejecting argument that Rule 407 evidence was not discoverable).

[29] *See Osagie*, 586 F. Supp. 3d at 325 (observing that Congress has taken steps to shield confidential mental health treatment from the rules of discovery); *Williams v. Miles*, 2020 WL 3546808, at *3 (D.N.J. June 30, 2020) (observing that the Federal Rules of Civil Procedure provide specific procedures for the protection and production of privileged material).

the settlement agreements implicates the confidentiality rights of third parties, those concerns could be addressed by other means, such as a protective order.[30]

Nevertheless, Jackson has not met his burden to show that the settlement agreements are relevant to any party's claims or defenses.[31] Though the settlement agreements may be relevant to a damages analysis,[32] that puts the cart before the horse.[33] Defendants are not liable for damages unless they are found to have violated the TCPA. The settlement agreements are not relevant until then, if at all.[34] Jackson argues that discovery of the settlement agreements is necessary for him to determine whether Clearlink "willfully or knowingly violated" the TCPA, which may entitle him to treble damages.[35] However, Jackson's position is undermined by the very authorities he relies on, which held that prior complaints or litigation finding that the defendant violated the TCPA using the same practices are relevant.[36] Settlement agreements are neither complaints nor records of factual findings by a court.[37] There

---

[30] *See Kent v. The New York State Public Employees Federation, AFL-CIO*, 2019 WL 457544, at *6-7 (N.D.N.Y. Feb. 5, 2019).

[31] *Osagie*, 586 F. Supp. 3d at 321.

[32] *Cf.* Mtn. to Compel Settlement Agreements at 5-8.

[33] *See Fossil Group, Inc.*, 2021 WL 5181308, at *6 ("To the extent that settlement agreements become relevant later in the case on questions of damages if and when liability is established, it is conceivable the settlement agreements could be disclosed at that time if appropriate.")

[34] The TCPA provides that a private person or entity may recover up to $500 per violation, or $1,500 per violation if the violation was willful or knowing. 47 U.S.C. § 227(b)(3). As the available recovery in this case is set by the statute, prior settlement agreements would likely have little utility in calculating a potential damages award.

[35] Mtn. to Compel Settlement Agreements 5 (citing 47 U.S.C. § 227(b)(3)).

[36] *Id.* (collecting cases).

[37] *Cf. id.* ("A finder of fact could conclude that the existence of multiple complaints suggests that [defendant] was aware it was violating the TCPA." *Id.* (quoting *Morser v. Hyundai Capital Am., Inc.*, 2015 Wl 4527016, at *3 (M.D. Fla. July 27, 2015)), ("If there is prior litigation finding that Defendant violated the TCPA using the same practices as it did in the present

may be the case where settlement agreements are the best evidence of prior complaints. However, Clearlink avers, and Jackson appears to agree, that it "has already produced documentation of the few formal and informal TCPA complaints Clearlink had previously received."[38] Jackson has not advanced any argument for why disclosure of the settlement agreements would not be duplicative of what has already been produced.[39]

The Court also rejects Jackson's argument that the settlement agreements are relevant because they will show how quickly and for how much Clearlink settled prior cases. He suggests that a case which is rapidly settled for a large sum will evince a meritorious claim or that Clearlink knew its vendors were violating the TCPA on its behalf.[40] That Jackson cites no authority for this point is unsurprising; cases settle for different amounts and on different timetables for any number of reasons. Applying Jackson's reasoning to this case, now pending for eighteen months and therefore, not "settl[ed] right away,"[41] would suggest that Jackson's own

---

action, then this evidence would support a finding that Defendant knew it was violating the TCPA." (quoting *Lardner v. Diversified Consultants, Inc.*, 2014 WL 1979221, at *1 (S.D. Fla. May 8, 2014)).

[38] Clearlink Settlement Opp. 2. Jackson does not appear to dispute this. *Cf.* Mtn. to Compel Settlement Agreements at 3 ("Discovery has commenced and revealed that Clearlink has received multiple complaints of unlawful telemarketing that has been conducted by the third-party vendors it has hired.")

[39] *Cf.* Fed. R. Civ. P. 26(b)(2)(C) (instructing courts to limit discovery that is "unreasonably cumulative or duplicative).

[40] Mtn. to Compel Settlement Agreements 8.

[41] *Cf. id.*

case is of limited merit. Presumably, he would not have maintained this litigation for the last year and a half if he believed that were the case.

Because Jackson has failed to carry his burden to show that the settlement agreements are relevant to any party's claims and defenses, and because the settlement agreements, to the extent they are relevant, are duplicative of other discovery already served, the Court will deny Jackson's motion to compel production of the settlement agreements.

## B.    Motion to Compel Due Diligence

Jackson also seeks discovery of due diligence of DMS and another telemarketing vendor, Datalot, performed by Clearlink in connection with since abandoned plans to acquire those companies.[42] Jackson argues that the diligence performed by Clearlink "is relevant to both vicarious liability and whether the TCPA violations at issue were willful or knowing."[43] He suggests that Clearlink's decision not to purchase DMS because it was not comfortable with how DMS generated its leads could show that "Clearlink in fact knew that DMS' or Datalot's procedures for complying with the TCPA were deficient" which "may well be dispositive on the issue of . . . vicarious liability."[44] Clearlink argues that the sought discovery is irrelevant.[45] Both Clearlink and DMS suggest that Jackson's arguments to the

---

[42] Mtn. to Compel Diligence 1.
[43] *Id.* at 7.
[44] *Id.* at 8.
[45] Clearlink Diligence Opp. 3.

contrary rely on a mischaracterization of deposition testimony.[46] They further argue that the sought discovery is overly broad and disproportionate to the needs of the case.[47]

Jackson's argument that the sought discovery is relevant largely relies on the deposition testimony of Clearlink's former Chief Marketing Officer and Chief Strategy Officer, Ted Roxbury.[48] Jackson quotes Roxbury as saying Clearlink opted not to acquire DMS because DMS was "more focused on lead generation and customer acquisition through channels that Clearlink was not proficient in or comfortable with."[49] Contrary to Jackson's suggestion, this does not reveal that Clearlink was uncomfortable with the legality of DMS' operations. Instead, Roxbury is testifying that Clearlink was "uncomfortable" with acquiring a business that operated outside of its core competency.[50] To the extent that Jackson argues the sought discovery is relevant because of Roxbury's testimony, he has failed to carry his burden.

Jackson also argues that Clearlink will have necessarily gained knowledge and insight into DMS' and Datalot's "practices for generating and calling upon

---

[46]   *Id.* at 3; DMS Diligence Opp. 3.
[47]   Clearlink Diligence Opp. 4-6; DMS Diligence Opp. 8-10.
[48]   Mtn. to Compel Diligence 2-4.
[49]   *Id.* at 3 (quoting Roxbury Dep., Doc. 59-2, 36:4-9).
[50]   DMS Diligence Opp. 5.

leads."[51] Here, Roxbury's testimony does lend support to Jackson's position.[52] As there is no dispute that Clearlink's knowledge of its vendors' practices for generating and calling leads is relevant, the burden shifts to Defendants to show that the discovery is unduly burdensome or disproportionate. The Court finds that they have done so. Much of the information learned by Clearlink through the due diligence process is not relevant to the claims or defenses in this case, so for example, requests for all "notes,"[53] "correspondence,"[54] or "documents"[55] related to Clearlink potentially acquiring DMS are overbroad as they seek largely irrelevant information. To the extent that those requests do seek relevant information, those requests are duplicative of, for example, requests for "internal communications . . . regarding Digital Media Solutions,"[56] and "all communications with Digital Media Solutions."[57] Clearlink has produced thousands of documents regarding its relationship with DMS, and, in the absence of any evidence that the discovery sought here would turn up any new, relevant evidence, the Court finds that the requests are unnecessarily duplicative. Therefore, the Court will deny Jackson's motion to compel production of Clearlink's due diligence of DMS and Datalot.

---

[51] Mtn. to Compel Diligence 8.
[52] *See* Roxbury Dep., Doc. 59-2, 36:10-17) (describing lead generation channels that Clearlink was not proficient in or comfortable with).
[53] Clear Link Obj. to Pls.' Third Set of Disc. Reqs., Doc. 59-3, Req. 1.
[54] *Id.* Req. 2.
[55] *Id.* Req. 4.
[56] Clear Link Obj. to Pls.' First Set of Disc. Reqs., Doc. 59-1, Req. 10.
[57] *Id.* Req. 8.

**IV.    CONCLUSION**

For the foregoing reasons, the Court denies Jackson's Motions to Compel.

An appropriate Order follows.

BY THE COURT:


_s/ Matthew W. Brann_
Matthew W. Brann
Chief United States District Judge